UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

REGINALD G. MOORE *et al.*,

    Plaintiffs - Respondents,

v.

JANET NAPOLITANO, Secretary of the
U.S. Department of Homeland Security,

    Defendant - Petitioner.
_____

No. 13-8002

**REPLY TO PLAINTIFFS-RESPONDENTS OPPOSITION TO PETITION OF SECRETARY NAPOLITANO FOR PERMISSION TO TAKE AN <u>INTERLOCUTORY APPEAL UNDER FED. R. CIV. P. 23(f)</u>**

    STUART F. DELERY,
    <u>Acting Assistant Attorney General.</u>

    CHARLES W. SCARBOROUGH,
    <u>Civil Division, Appellate Staff.</u>

    RONALD C. MACHEN JR.,
    <u>United States Attorney.</u>

    R. CRAIG LAWRENCE,
    <u>Assistant United States Attorney.</u>

    MARINA UTGOFF BRASWELL,
    BENTON G. PETERSON,
    PETER C. PFAFFENROTH,
    <u>Assistant United States Attorneys.</u>

C.A. 00-953

Defendant Janet Napolitano, Secretary of the U.S. Department of Homeland Security, has moved under Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5, for permission to appeal the District Court's manifestly erroneous order certifying a class action under Fed. R. Civ. P. 23(b)(3), comprised of African-American Special Agents ("SA") alleging discrimination with respect to numerous different positions, at two different grade levels, that became available from 1995 to 2005, involving distinct steps in a diverse promotions process, and different decisionmakers. In particular, some class members complain about failing to be placed on a best qualified list ("BQL") for a position on which they had bid; others complain that once placed on a BQL they were too far down the list to be considered; while others complain that even with a high placement on a BQL they were not selected for promotion. Although the promotions process is driven largely by the scores SAs receive prior to bidding for promotion, no evidence of discrimination was presented regarding the assignment of scores, despite the fact that use of an SA's score is the common attribute on which plaintiffs focus. The District Court, like plaintiffs, failed to properly assess these outcome determinative facts, relying instead on statistical evidence of discrimination affecting some class members but not others, and in some instances at differing time periods. In sum, plaintiffs complain about different parts of a multi-step selection process, involving different applicant pools for each position, and they identify no policy or other

characteristic of the Secret Service's promotions process that allegedly caused an injury common to all class members.

As explained in the government's petition, immediate appellate review is warranted for three main reasons.  *First*, the District Court failed to properly apply the Supreme Court's recent decision in *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011), requiring the identification of an issue common to the class that can be litigated on a class-wide basis and resolved by one common decision.  Plaintiffs' attempt to down-play the significance of *Wal-Mart* is undermined by the Seventh Circuit decision on which they heavily rely, declaring *Wal-Mart* "an important development in the law governing class certification in employment discrimination cases -- possibly a milestone."  *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 487 (7th Cir. 2012).  *Second*, the District Court erred in holding that the undisputed participation of class members in a decision-making process alleged to reflect "a general policy of discrimination" failed to create insurmountable conflicts within the class absent a direct accusation of discrimination by one class member against another.  Plaintiffs cite no case that supports this conclusion, which presents a novel and fundamental issue in need of resolution.  *Third*, the recent Supreme Court decision in *Comcast Corp. v. Behrend*, --- S. Ct. ---, 2013 WL 1222646 (Mar. 27, 2013), makes clear that the District Court erred in brushing aside as essentially irrelevant to the predominance

2

inquiry of Rule 23(b)(3) the myriad individual issues involved in deciding whether a class member was unlawfully denied a promotion and, if so, what damages are due. The Court in *Comcast* underscored "the [district] court's duty to take a close look at whether common questions predominate over individual ones." *Id*. at *4 (internal quotation marks and citation omitted).[1]

## I.   The Required Commonality for Class Certification is Lacking.

Plaintiffs argue that the Secret Service's Merit Promotion Plan ("MPP") is an agency-wide promotions "policy" that forms the "glue that holds the class members' claims together." Opp. at 12. At the same time, however, they concede that the individual decisonmaking under the MPP involves three different groups of officials who evaluate an SA seeking a score with which to bid on positions (First-Level Evaluation, Peer Panel and Second-Level Panel), and two other distinct entities who decide which SAs should receive a promotion (Advisory Board and Director). *Id*. at 3-4. Plaintiffs fail to undermine the government's showing that during the class period over a thousand individuals were involved in the promotions process; their claim that "key decisions under the MPP are made by

---

[1] Plaintiffs spend much of their brief arguing that interlocutory appeal should not be granted because there is no "death-knell" situation or unsettled or fundamental issues of law. Opp. at 8-11. Although the government does not contend there is a "death-knell" situation present, the Supreme Court's recent decisions in *Wal*-Mart and *Comcast* underscore the existence of unsettled and fundamental issues of law in need of immediate resolution. And manifest error alone is a cause for a Rule 23(f) interlocutory appeal. Petition at 9-10.

3

just a few people at headquarters" is unsupported and wrong. *Compare* Petition at 4 & n.2, 6 *with* Opp. at 12-13.

Plaintiffs also claim that the individuals involved in the MPP promotions process receive "the same briefing, instructions, and training" and "information about the Agents being scored," but they fail to identify any briefing, instruction or training that they claim is causing any discrimination. Opp. at 13. Instead, they lump all the distinct steps in the MPP process together and claim that it is causing discrimination because their statistical evidence demonstrates certain disparities at different parts of, and different times in, the process. As *Wal-Mart* makes clear, such broad claims of discrimination do not establish commonality.

This is a far cry from the facts in *McReynolds*, on which plaintiffs so heavily rely. In *McReynolds*, the Seventh Circuit reversed a denial of class certification for a disparate impact claim involving a request for only injunctive relief where evidence demonstrated that black brokers on average earned less than white brokers. *Id*. at 490-92. The Seventh Circuit concluded that two specific company-wide policies presented "a pair of issues that can most efficiently be determined on a class-wide basis" and resolved "'in one fell swoop . . . .'" *Id*. at 491 (citation omitted). A "teaming policy" permitted brokers to form teams to share clients, to decide who could join the team, and resulted in some "fraternities" divided along racial lines. *Id*. at 489. An "account distribution policy" established criteria for

4

transferring customers' accounts when a broker left, and distributions were based on the past success of the brokers competing for the transferred accounts. *Id*. The Seventh Circuit stated that if the teaming policy made it difficult for black brokers to join good teams generating more revenue, thereby making it difficult for them to receive transferred accounts, this in turn would make it difficult for them to compete for the next set of transferred accounts, and "a vicious cycle will set in." *Id*. at 490. The Court concluded that the "incremental causal effect" of these policies "could be most efficiently determined on a class-wide basis." *Id*. at 490.

By contrast here, plaintiffs fail to challenge any specific, identifiable policy. The fact that certain people involved in the process sit in the same room in Washington, D.C. at various times, and receive briefing, instructions and training, Opp. at 13, does not transform the MPP into a specific policy presenting any issue that can be resolved "in one fell swoop." Tellingly, plaintiffs never identify what specific change in the MPP would affect the class as a whole.

Trying to overcome this deficiency, plaintiffs argue that the District Court correctly decided that their statistics show that the Secret Service "'operated under a general policy of discrimination.'" Opp. at 15, *quoting* Mem. 37, 40. But they fail even to acknowledge *Wal-Mart*'s requirement of "significant proof" of such a policy, *id*., 131 S. Ct. at 2553, let alone demonstrate how they have satisfied that stringent standard. Opp. at 15-16.

5

It is undisputed that the Secret Service has specific policies prohibiting discrimination, and there is no overall disparity in the promotion rate of African-American SAs that would present an issue common to the class. Pet. at 14; *compare McReynolds*, 672 F.3d at 490 (black brokers earned less than white brokers). And regardless of whether intermediate steps in the MPP process that do not create a bright-line barrier can form the basis of a disparate impact class claim, Opp. at 15, *citing Conn. v. Teal*, 457 U.S. 440 (1982) (promotion examination presented pass-fail barrier to employment opportunity) -- a novel issue this Court has yet to address – such is not the class plaintiffs sought to certify. A claim about the number of applicants placed on the BQL does not support certification of a class that includes individuals who made every BQL on which they bid, and claims about the ranking of applicants on the BQLs do not support certification of a class that includes SAs who never made the BQL or who were consistently ranked high on the BQL but not selected.

Plaintiffs' only response to the government's observation that the patchwork nature of plaintiffs' statistical analyses undermines the conclusion that class members suffered a common injury is to state that all African-American SAs are "being disadvantaged by the use of their MPP scores." *Compare* Opp. at 16-17 *with* Pet. at 15. But plaintiffs "failed to prove that there are *in fact* . . . common questions" about MPP scores, *Wal-Mart* 131 S. Ct. at 2551; indeed, they offered *no*

6

*evidence* of any statistical disparity in the assignment of MPP scores to African-American SAs, and they ignore the impact of bidding choices made by SAs, which directly affect the composition of the BQLs. *See* Pet. at 5-6.

In sum, the District Court and plaintiffs identify no common practice that could be enjoined to redress their disparate impact claim, *compare McReynolds*, 672 F.3d at 491 (injunction against teaming and account distribution policies possible), or that forms the common thread of a pattern and practice disparate treatment claim. Compliance with *Wal-Mart* is utterly lacking.

## II.　　Inadequacy Requires no Direct Accusations Among the Class.

Plaintiffs argue that the District Court correctly held that only a direct accusation of discrimination by one class member against another can create a conflict that would undermine adequacy of representation. Opp. at 17-18. None of the cases cited by plaintiffs supports this position, which is in considerable tension with plaintiffs' contention that a "general policy of discrimination" permeates the decision-making process. *Id*.

Plaintiffs and the District Court rely on *McReynolds v. Sodexho Marriott Services*, 208 F.R.D. 428, 447 (D.D.C. 2002), but that decision is inapposite because there the "plaintiffs ha[d] not alleged discriminatory treatment by other class members with respect to promotions." *Id*. at 447. Moreover, and importantly, there were no claims that the supervising class members had

7

contributed to any of the defendant's alleged discriminatory policies which, unlike here, were identified with specificity by the Court. *Id.* at 443, 447. Here, by contrast, it is undisputed that numerous class members served on MPP rating panels during the class period, Appx. 46, and assigned the very scores that other class members specifically allege are discriminatory, while plaintiffs allege that the *entire* MPP process constitutes a monolithic policy of discrimination during that period. Neither plaintiffs nor the District Court has ever explained why the question whether conflicts among class members fatally undermine class cohesion should turn solely on whether the allegedly discriminating officials have been identified by name.[2]

The contours of when an impermissible class conflict exists in Title VII cases involving non-promotions, where the class contains members who directly participated in the promotion process being challenged as discriminatory, is an important issue for this Court to revisit, given the length of time since the Court last addressed the issue in *Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987). This is especially true given the Supreme Court's more recent emphasis in *Wal-Mart*

---

[2]  Additionally, in *McReynolds* the putative class was approximately 2000 persons. *Id.*, 208 F.R.D. at 440. By contrast, the class here ranges from a possible 42 to 120. Appx. 35. Conflicts of interest in a class of any size in this range are far more significant than a few isolated conflicts among 2000 class members.

8

that class certification under Rule 23(a) requires a "'rigorous analysis.'" *Id.*, 131 S. Ct. at 2551, *quoting General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

### III. The Predominance Inquiry of Rule 23(b)(3) is not Satisfied.

The District Court acknowledged, and plaintiffs do not dispute, that many individual issues would bear on whether any individual class member was denied a promotion, and to what extent that individual is entitled to back pay and/or compensatory damages. Appx. 48-49. The Court manifestly erred in holding that these individual issues were irrelevant to the predominance inquiry under Rule 23(b)(3).

Just days ago the Supreme Court in *Comcast* emphasized that the "rigorous analysis" *Wal*-Mart requires to determine if the prerequisites of Rule 23(a) have been satisfied, is equally applicable to the prerequisites of Rule 23(b)(3). *Comcast*, 2013 WL 1222646, *4. If, for example, questions of individual damage calculations "overwhelm questions common to the class," Rule 23(b)(3)'s predominance requirement cannot be met. *Id*. at *5. Thus, not only must individual issues relevant to liability not overwhelm questions common to the class, but the same is true for damages. Contrary to the District Court's manifestly erroneous view, and plaintiffs' argument, consideration of the individual issues that must be decided after resolution of a common question are directly relevant to the question of whether predominance under Rule 23(b)(3) has been met.

9

Application of *Comcast* in the Title VII area presents an important, fundamental and unsettled issue for this Court to resolve. Plaintiffs argue that the *Teamsters* framework for Title VII litigation was reaffirmed by *Wal-Mart*, and differences in class members' experiences may be resolved in subsequent individual *Teamsters* hearings after a rebuttable inference has been raised that class members were victims of discrimination. Opp. at 19; *Int'l Bd. Of Teamsters v. United States*, 431 U.S. 324 (1977). But *Wal-Mart*'s references to *Teamsters* do not speak to the predominance inquiry, because *Wal-Mart* involved a class certified under Rule 23(b)(2), which requires no showing that common questions predominate over individual ones. Although *Teamsters*-style hearings may be an appropriate procedure for resolving individual questions in the context of the putative Rule 23(b)(3) class here, the existence of such a procedure did not relieve the District Court of its "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, at * 4 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). The District Court's manifest legal error in effectively failing to analyze predominance warrants review.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, and those set forth in the Petition, this Court should allow an immediate appeal from the District Court's order certifying a class and vacate the February 25, 2013 order.

STUART F. DELERY
Acting Assistant Attorney General

CHARLES W. SCARBOROUGH,
Civil Division
Appellate Staff

RONALD C. MACHEN JR.
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney


/s/ *Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL
BENTON G. PETERSON
PETER C. PFAFFENROTH
Assistant United States Attorneys

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of April, 2013, a copy of the foregoing reply was served on counsel for Plaintiffs-Appellees by the Court's ECF system, by email, and by regular U.S. mail, marked for delivery to:

Erica Kneivel Songer, Esq.
Thomas John Widor, Esq.
E. Desmond Hogan, Esq.
HOGAN LOVELL US LLP
555 13th Street, N.W.
Washington, D.C. 20004

Jennifer I. Klar, Esq.
John Peter Relman, Esq.
Megan Cacace, Esq.
RELMAN, DANE & COLFAX, PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036

/s/ *Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL
Assistant United States Attorney